HMG/USAO#2017R00428

18-1798-ADC   18-1799-ADC   18-1800-ADC

FILED_____ ENTERED
LODGED_____ RECEIVED

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT**

I, James J. Jenkins, a Special Agent with the U.S. Department of State, Diplomatic

JUN 2 5 2017

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

Security Service in Baltimore, Maryland, being duly sworn, deposes and states as follows:

**I.   INTRODUCTION**

1.      This affidavit is submitted in support of a criminal complaint against **Asher**

**SHARVIT ("A. SHARVIT"), Oren SHARVIT ("O. SHARVIT"),** and **Rona ZHFANI**

**("ZHFANI")** (collectively the "defendants") for conspiracy to defraud the United States, in

violation of 18 U.S.C. Section 371, by impeding, impairing, and obstructing the lawful

government functions of the U.S. Department of State ("DOS") and the U.S. Department of

Homeland Security ("DHS") to administer, regulate, and enforce laws and regulations

concerning (i) the hiring of foreign citizens, (ii) the issuance of nonimmigrant visas, and (iii) the

entry of, presence of, and work restrictions on foreign citizens in the United States, for which

they are respectively responsible.

2.      The overall conspiracy operated from at least in or about 2012 to in or about

2017. At various times during the conspiracy, **A. SHARVIT, O. SHARVIT,** and **ZHFANI** have

owned, controlled, operated, worked for, and/or otherwise been affiliated with the following

entities:  Unlimited Treasures, Inc., Unlimited 13 Corp., Deja Vu Cosmetics, and others

(collectively "Unlimited" or "Defendants' Companies.").[1]  The Defendants' Companies leased or

operated kiosks and storefronts at shopping malls and centers in Virginia, Maryland, and

Delaware.  The Defendants' Companies often used the trade names Deja Vu and BioXage.

---

[1]      According to Maryland Department of Assessments and Taxation records, as of April
2010, **A. SHARVIT** was the registered agent for Unlimited Treasures.  As of June 2015, co-
conspirator #4 was the registered agent of Unlimited 13 Corp.  Deja Vu Cosmetics is company
that was based in Israel and Pennsylvania—co-conspirator #1 operated the Pennsylvania portion.



3.    Your affiant submits that the evidence set forth herein shows that the defendants and their co-conspirators (1) recruited foreign citizens to travel to the United States and work as employees in the Defendants' Companies; (2) caused foreign citizens to apply for B1/B2 visitor visas and/or visa extensions,[2] which did not permit employment in the United States; (3) paid foreign citizens in cash without reporting their employment to federal or state authorities, nor making proper payroll deductions; and (4) provided foreign citizens with travel reimbursements, and arranged their transportation and lodging in the United States, which facilitated the defendants' illegal use of foreign workers. The foreign workers were only paid on a commission basis, and the Defendants' Companies paid no payroll taxes.  Your affiant submits that this suggests that an object of the conspiracy was to increase the financial profits of Unlimited and the defendants and co-conspirators controlling Unlimited.

4.    The Department of State Diplomatic Security Service ("DSS"), Homeland Security Investigations ("HSI"), and the Department of Labor – Office of Inspector General have been investigating the defendants for more than one year.  Your affiant and other federal agents have obtained information from subpoenas, searches pursuant to the border search authority of the DHS, government records, search warrants, consent searches, interviews, surveillance, and other investigative means.

5.    The facts set forth in this affidavit are known to me as a result of my participation in this investigation, from information provided to me by other law enforcement officers and

---

[2]    Individuals receiving B1/B2 visitor visas are supposed to be entering the United States for tourist and/or business purposes.  While a visitor admitted in B1 status would be allowed to conduct business activities such as attending conferences, negotiating contracts, or consulting business associates, neither B1 nor B2 status confers authorization to work in the United States. At a Port of Entry, depending on their purpose of travel a foreign citizen is often admitted to the United States in either B1 (business) or B2 (tourist visitor) status.

government officials, and from records, documents, and other evidence obtained during this investigation. Since this affidavit is being submitted for the limited purpose of establishing probable cause for a criminal complaint, I have not included each and every fact known to me concerning this investigation, but rather those facts that I believe are necessary to establish probable cause to believe the defendants committed the crime referenced above. References to dates, times, places, and amounts are intended to be approximate. All translations from Hebrew or French to English were done using Google Translate unless otherwise noted. Your affiant has also used Google Translate to help your affiant summarize foreign language communication referenced herein. Everything set forth in this Affidavit is true to the best of my knowledge and belief.

6.     I am a Special Agent with the U.S. Department of State, Diplomatic Security Service, and have been employed by the Department of State since September 2011. I am currently assigned to HSI's Document and Benefit Fraud Task Force in Baltimore, MD. This task force investigates frauds related to documents, identities, and immigration benefits. I am empowered under 22 U.S.C. § 2709 to apply for a criminal complaint, and serve federal arrest and search warrants.

## II.     PROBABLE CAUSE

### Search Warrants

7.     On or about July 27, 2017, DHS law enforcement officers seized an iPhone 7 from co-conspirator #1, pursuant to their border search and seizure authority, when he entered the United States. On September 19, 2017, United States Magistrate Judge J. Mark Coulson (D. Md.) issued a search warrant for continued examination of the phone.

8.      As detailed further herein, co-conspirator #1's iPhone yielded extensive evidence about the conduct of the scheme, including voluminous WhatsApp[3] messages. The defendants and their co-conspirators used electronic messages to discuss the conspiracy and details related to recruiting, hiring, scheduling, paying, and housing foreign citizens. In particular, the WhatsApp messages make plain that the defendants knowingly used foreign citizens as employees and sought to circumvent the immigration and employment laws of the United States.

9.      Your affiant and other federal agents later identified multiple email accounts related to the conspiracy. On or about February 15, 2018, Magistrate Judge J. Mark Coulson authorized search warrants for five email addresses associated with the investigation. The email accounts of co-conspirators #1 and #2 contained additional evidence of illegal activities.

**The Defendants' Companies Had Foreign Citizens Working At Malls And Other Retail Locations Ranging From The Washington, D.C. To New York Metropolitan Areas**

10.     The federal investigation has revealed that the Defendants' Companies leased retail space at multiple shopping malls in Maryland and Delaware. Agents have spoken with multiple representatives at shopping malls in Maryland and Delaware. From these interviews and records obtained, agents know that the business locations were often leased using the business entities Unlimited or Deja Vu Cosmetics. The stores often identified themselves to the

---

[3]      WhatsApp is a messaging application that can be used on mobile phones. WhatsApp allows for voice calls and exchanging text messages including in a group with multiple recipients. The defendants, along with other co-conspirators, were members of a WhatsApp message group titled "management." This group included "Asher," "רונה," "אורן," and the first names of co-conspirators #1, 2, and 3. A native Hebrew speaker reviewed the names רונה and אורן and your affiant learned that they translate to "Rona" and "Oren." Your affiant believes that Asher refers to **A. SHARVIT**, Rona refers to **ZHFANI**, and Oren refers to **O. SHARVIT** and WhatsApp messages from these names are so attributed in this affidavit. This affidavit references co-conspirator #1, co-conspirator #2, co-conspirator #3, and co-conspirator #4. None of those four individuals are the named defendants above.

4

However, this affidavit uses the term "co-conspirators" at times to refer to both the individual defendants above and other co-conspirators. *See* Paras. 22, 38, 48, 55, and the header before Para. 17.

public under the names Deja Vu Cosmetics and BioXage. Certain members of the conspiracy, including **A. SHARVIT,** were also affiliated with another venture called Filicori Zecchini.[4]

11.    GGP, a mall management company, provided relevant information about the leases (and lease renewals) of the Defendants' Companies, which is summarized below:

| Mall | Leasing Company | Store Name | Signatory | Date Signed | Store / Cart (Kiosk) |
|------|------|------|------|------|------|
| Christiana Mall | Deja Vu | Deja Vu | co-conspirator #1 | February 27, 2015 | Cart (Kiosk) |
| Christiana Mall | Deja Vu | Bioxage | co-conspirator #1 | March 4, 2015 | Store |
| Towson Town Center | Deja Vu | Bioxage | co-conspirator #1 | April 8, 2015 | Store |
| Towson Town Center | Deja Vu | Deja Vu | co-conspirator #1 | May 8, 2015 | Cart (Kiosk) |
| Towson Town Center | Deja Vu | Deja Vu | co-conspirator #1 | April 8, 2016 | Cart (Kiosk) |
| White Marsh Mall | Unlimited 13 | Deja Vu | co-conspirator #3 | November 1, 2016 | Cart (Kiosk) |
| Christiana Mall | Unlimited 13 | Bioxage | co-conspirator #4 | February 2, 2017 | Cart (Kiosk) |
| Christiana Mall | Deja Vu | Deja Vu | co-conspirator #1 | February 24, 2017 | Cart (Kiosk) |

12.    Based on a WhatsApp message that **A. SHARVIT** sent on or about December 30, 2015, your affiant submits that **A. SHARVIT** had broad managerial responsibilities and that the scope of the conspiracy's operations were quite broad.  In the WhatsApp message, **A. SHARVIT** provided an update on the leases at various locations, writing:

---

[4]    **A. SHARVIT** and other members of the conspiracy are/were involved in operating multiple retail coffee shops called Filicori Zecchini.  Their shops are located in New York and Maryland.  Federal agents have identified multiple current or former employees of Maryland-based Filicori Zecchini locations who are/were in the United States on visitor visas or on a visa waiver (which also prohibits employment).  **A. SHARVIT** and others are believed to be investors in Filicori Zecchini locations.

"Ok Guy's so!!!
We will have 33 people left+Tami and israel+maya and you too!!;)
So 37+2 that needs to arrive.
We will keep:
*Mills1+2(Lease signed)
*Fsk mall(lease signed)
*Valley(lease signed)
*Towson(lease signed)
*Wheaton mal(signed)
*christianna(signed)
*Towson store(signed)
*Christianna store (signed)
*Roosevelt store(signed)
*Whitemarch(moti)
*Harford(jean mi please sign for one month at the rate we pay and tell her we might renew)
*Pg Plazza(Please renew for one month and tell her at this rate we can not stay more for the moment)

Locations to close tommorow night:(5,jean mi please organize closings properly and make sure all products will be reused for the other locations)

Valley 2
Pg 2
Francey 2
Springfield
Annapolis
Mills 3

Yallaaaaa guy's we start the year with 13 locations!!!;)
Woujouuuuuuu!!!!!!!!!!!!"

13.     Based on context, geography, and information gathered during the investigation, your affiant believes "Mills" referred to Arundel Mills Mall, "Fsk mall" referred to Francis Scott Key Mall, "Valley" referred to Valley Mall, "Towson" referred to Towson Town Center, "Wheaton" referred to Westfield Wheaton, "Christianna [sic]" referred to Christiana Mall, "Roosevelt store" referred to a store operated in the Roosevelt Hotel in New York, "Whitemarch [sic]" referred to White Marsh Mall, "Harford" referred to Harford Mall, "Pg Plazza [sic]"



referred to The Mall at Prince Georges, "Springfield" referred to Springfield Town Center, and "Annapolis" referred to Westfield Annapolis.

14.    On or about December 20, 2015, **A. SHARVIT** was sent an e-mail entitled "List of Employees + Malls + Apartments." The e-mail included a spreadsheet attachment entitled "Employees list DEC 2015.xlsx." The "employees" tab contained the names of **O. SHARVIT** and **ZHFANI** as well as 50 first and last names and one first name. Hereinafter, those employees are identified by their initials (as are other individuals herein believed to be employees of the Defendants' Companies.)

15.    Your affiant submits that based on the investigation and information detailed herein there is probable cause to believe that the majority of these 51 employees lacked authorization to work in the United States and were therefore illegally employed. However, the employee list did not contain dates of birth, thus making it difficult to identify and cross-reference employees to immigration records with certainty. Using other records and information obtained during this investigation, your affiant has been able to determine that 10 employees on the list (O.P, S.Y., L.C., Y.E., E.S., M.G., R.Z., A.D., L.B.M., and A.A.) are/were foreign citizens present in the United States without work authorization. Your affiant has also been able to identify two employees on the list, M.B. and H.C., who had/have legal authorization to work in the United States. The immigration status of the remaining individuals cannot be definitively established at this time, but the evidence discussed in this affidavit suggests that many of the 51 employees who worked for the Defendants' Companies lacked the legal authority to work in the United States.

16.    On or about December 20, 2015, **A. SHARVIT** sent a WhatsApp message to the other defendants and co-conspirators, which included the names of mall locations, such as

"Towson" or Pg Plazza" as well as hours, such as "(7h00 am-10h00pm)" or "(6h30-11hpm)."

Under each location, **A. SHARVIT** listed certain Unlimited employees, typically using just their

first names. Many of these first names match the full employee names emailed to **A. SHARVIT**

on or about December 20, 2015.

**The Co-Conspirators Recruited And Used Foreign Workers**

17.    Through records and interviews, your affiant and other federal agents have

identified more than 40 foreign citizens who are believed to currently work or have worked at the

Defendants' Companies and/or Filicori Zecchini. Based on information gathered, it appears that

most Unlimited employees were foreign citizens and the majority of the foreign citizens entered

the United States on visitor visas or under visa waivers. Your affiant and other federal agents

have uncovered electronic evidence as well as information from other sources that revealed that

the defendants and their co-conspirators actively sought out foreign citizens to work at

Unlimited. In particular, your affiant and other federal agents have reviewed messages either in

WhatsApp and/or email in which **A. SHARVIT** and others communicated about the recruitment,

transportation, and visa statuses of foreign citizens.

18.    For example, your affiant located an email forwarded to co-conspirator #1 on or

about April 19, 2015. The email appears to have been initially sent by **A. SHARVIT**. **A.**

**SHARVIT** wrote: "I was thinking yesterday of where we are standing and where we need to

go…Also I wrote a plan that will direct us for the near future." Attached to the email was a

Microsoft Word document that significantly included the following points:

- "*The business is growing by: 1. Bring new employees by opening an efficient
  manpower office in Israel:

Goals: bring as many employees as we can from Israel for our retail companies but also in the near future by selling them to other retail companies that will sell our products;" and

- "2. keep working with creation[5] and maybe start to work with another man power Israeli company."

19.     Several WhatsApp messages were similarly revealing. On or about June 1, 2015, co-conspirator #2 sent a WhatsApp message to the defendants and other co-conspirators. The message contained an employment contract, which was signed by co-conspirator #2, and written in Hebrew with the title "Unlimited."

20.     A Hebrew speaker working at the U.S. Consulate in Tel Aviv translated the employment contract. According to the translation, Unlimited employees were: (i) required to work 5 ½ days per week; (ii) paid every two weeks based solely on their sales (a commission of 25-30%); (iii) provided with local travel arrangements upon their arrival at an airport in the United States; (iv) offered a 50% reimbursement of their airplane travel costs if they worked for Unlimited for three months and a complete reimbursement if they worked for six months; (v) offered advanced sales training at Unlimited's office; (vi) provided with shared housing that included the first month free, and a weekly rent of $135 thereafter; and (vii) offered access to vehicles for getting to work and/or use during their days off.

21.     The name and Israeli identification number of O.P. are listed in the employment contract.[6] Your affiant learned from U.S. government records that O.P. entered the United States

---

[5]     Your affiant believes "creation" is a reference to the recruiting company used by the defendants to locate potential workers in Israel.

[6]     Your affiant submits that the June 1, 2015 WhatsApp message and attached document demonstrate probable cause to believe that the foreign citizen entering into this agreement actually worked for Unlimited.

on or about June 10, 2015 as a B-2 visitor, who was thus not authorized to work in the United States. While in the United States, O.P. applied to extend his period of admission. He subsequently departed on or about January 12, 2016. Approximately nine months later, on or about September 21, 2016, co-conspirator #2 sent WhatsApp messages (which your affiant used Google to Translate) to the defendants and other co-conspirators with a photograph of the boarding pass of O.P. and said that he would contact two co-conspirators for pick-up in Baltimore. The next day, O.P. re-entered the U.S. and was admitted on B-2 status. Your affiant believes this shows that the Defendants' Companies rehired O.P. after he had been out of the United States for a period of time.

22.     On or about September 17, 2015, **A. SHARVIT** sent a WhatsApp message to co-conspirators containing the travel itinerary of S.Y. **A. SHARVIT** then sent instructions (which your affiant used Google to translate) to obtain a train ticket for S.Y. to travel from New York to Baltimore and asked that the ticket be sent to co-conspirator #2. On September 18, 2015, S.Y. entered the United States and was admitted on a B-2 visa as a visitor.[7]

23.     Your affiant discovered what appears to be a recruiting brochure for Unlimited in the email account of co-conspirator #2. Using Google Translate your affiant found that it outlines terms of employment. Of note, the brochure states that a company representative in Israel will help employees needing visas to obtain them at the U.S. Embassy.

**Defendants' Companies Obtained Housing For Foreign Employees**

24.     Unlimited obtained housing for the foreign employees. Agents have identified Fallstaff Manor Apartments in the Pikesville area of Baltimore City ("Fallstaff") as a location

---

[7]     S.Y. subsequently sought an extension of her visitor visa, using a money order that your affiant has linked to Unlimited.

where many foreign citizens who worked for Unlimited lived. Based on the investigation to date, the Unlimited employees' housing at Fallstaff was arranged by upper-level members of the conspiracy. Agents interviewed a Fallstaff representative who said that between February 2013 and March 2017, **A. SHARVIT** and a co-conspirator rented approximately 13 different apartments. The Fallstaff representative advised that he/she believed the apartments were used to house employees of Unlimited Treasures.

25.    Agents obtained leases and applications from Fallstaff Manor Apartments and found that there were approximately 13 apartments associated with Unlimited Treasures. These apartments are described in the table below:

| Address | Signatory | Company Name | Date Signed |
|---------|-----------|--------------|-------------|
| 3014-I Romaric Court | **A. SHARVIT** | Unlimited Treasures | 1/18/2013 |
| 3017-E1 Romaric Court | **A. SHARVIT** | Unlimited Treasures | 1/18/2013 |
| 3011-D Fallstaff Manor | **A. SHARVIT** | Unlimited Treasures | 9/30/2013 |
| 3008-I Fallstaff Manor | **A. SHARVIT** | Unlimited Treasures | 11/5/2013 |
| 3016-I Romaric Court | co-conspirator #2 | Unlimited Treasures | 7/16/2014 |
| 3012-I Romaric Court | **A. SHARVIT** | Unlimited Treasures | 12/22/2014 |
| 3010-D Fallstaff Manor | co-conspirator #4 | Unlimited Treasures | 8/24/2015 |
| 3012-E1 Fallstaff Manor | co-conspirator #4 | Unlimited Treasures | 9/8/2015 |
| 3004-H Fallstaff Manor | co-conspirator #4 | Unlimited Treasures | 9/22/2015 |
| 3002-D Fallstaff Manor | co-conspirator #4 | Unlimited Treasures | 10/16/2015 |
| 3009-D Fallstaff Manor | co-conspirator #4 | Unlimited Treasures | 10/19/2015 |
| 3012-I Fallstaff Manor | co-conspirator #4 | Unlimited Treasures | 11/12/2015 |
| 3005-D Romaric Court | co-conspirator #4 | Unlimited Treasures | 11/19/2015 |

**The Defendants Conspired To Assist Employees In Filing Fraudulent Visa Extensions**

26.    The federal investigation, as detailed herein, has revealed that the defendants sought to influence and persuade foreign citizens to fraudulently enter the United States on visitor visas, and/or to file B-1/B-2 visa extensions with the U.S. Citizenship and Immigration Services ("USCIS") that contained fraudulent information. In many cases, the Defendants'

Companies paid fees to an immigration attorney who handled the visa extensions and later deducted the cost from employees' wages. The Unlimited employees would submit certain documents in their extension applications, including a Form I-539 (Application to Extend/Change Nonimmigrant Status) and supporting documentation. The Form I-539 contains the following question: "Have you, or any other person included in this application, been employed in the United States since last admitted or granted an extension or change of status?" The investigation has revealed that numerous Unlimited employees applied for visa extensions and fraudulently answered no on their Form I-539.

27.     Your affiant has been able to link a number of I-539 filings to the defendants' conspiracy through either the address used on the form and/or through photocopies of money orders submitted as supporting documents to show that the applicant had access to funds to pay for their extended stay in the U.S.

28.     Your affiant reviewed multiple I-539s filed by foreign citizens linked to Unlimited. Summary details of the applications are listed below. The applicants below listed multiple apartments associated with Unlimited as their address and/or used money orders linked to the conspiracy:

| Name | Date signed | Linked address | Linked money order |
|------|-------------|----------------|--------------------|
| R.Z. | 07/08/2013 | Yes | No |
| M.C. | 10/10/2014 | Yes | Yes |
| E.S.#2[8] | 12/19/2014 | Yes | Yes |
| L.C. | 10/12/2015 | Provided an address used by Defendants' Companies on other documents | No |

[8]     Numbers after an individual's initials are to indicate they are a different person than the one previously identified herein with the same initials.

| E.S. | 11/23/2015 | No | Yes |
|------|-----------|-----|-----|
| Y.A. | 12/22/2015 | Yes | Yes |
| M.G. | 1/7/2016 | No | Yes |
| S.Y. | 3/15/2016 | No | Yes |
| L.C. | 5/24/2016 (second application) | Provided an address used by Defendants' Companies on other documents | Yes |
| Y.E. | 5/24/2016 | Provided an address used by Defendants' Companies on other documents | No |
| L.B.M. | 6/3/2016 | Yes | No |
| Y.B. | 6/3/2016 | Provided an address used by Defendants' Companies on other documents | Yes |
| D.S. | 11/09/2016 | No | Yes |
| A.B. | 11/15/2016 | No | Yes |
| N.B.A. | 12/1/2016 | No | Yes |
| A.A.#2 | 12/20/2016 | No | Yes |
| M.G.#2 | Undated, received by USCIS in 2016 | No | Yes |

29.    Your affiant located electronic messages indicating that the defendants were aware of employees filing visa extensions and in some cases **A. SHARVIT** directed a co-conspirator to assist employees in the extension filings.

30.    On or about January 17, 2016, **A. SHARVIT** authorized co-conspirator #3 via a group WhatsApp message to hold a class for employees needing to file visa extensions.

31.    On or about April 11, 2016, **ZHFANI** sent a WhatsApp message to other defendants and co-conspirators in Hebrew. Using Google Translate, your affiant found that it said "! I made a call to [First name of L.C.] and he starts working on extending the visa he will

13



stay here." Your affiant believes that this likely refers L.C. and his preparation to file a Form I-539.

32.    On or about July 31, 2016, **A. SHARVIT** sent a WhatsApp message to co-conspirator #3, which your affiant translated using Google Translate. **A. SHARVIT** indicated in the message that [first name of L.C.] and [first name of Y.B.[9]], had their visa extensions denied and [first name of S.Y.] had her visa extension approved. He also said that [first name of L.B.M.] had notified "Rona" that her visa extension was denied. Your affiant believes Rona refers to **ZHFANI**. Government records show that L.C., Y.B., and L.B.M. all had visa extensions denied on or about July 15, 2016. S.Y. had a B2 (visitor) visa extension approved on or about July 12, 2016.

33.    On or about September 22, 2016, **A. SHARVIT** sent a WhatsApp group message in English to the defendants and co-conspirators, including **O. SHARVIT** and **ZHFANI**, directing co-conspirator #3 to make sure visa extensions were done at least a week before they were due and to make sure they were completed.

---

[9]    There is a one letter variation in the first name of the employee between the message and the employee list sent on or about December 20, 2015, one uses an "h" in the name and the other does not.

**Each Of The Defendants Knowingly Joined The Conspiracy**

34.     Your affiant believes that **A. SHARVIT** is one of the most senior members of the conspiracy.  As detailed herein, **A. SHARVIT** was a manager of a wide-ranging conspiracy involving more than 50 individuals.  The overall conspiracy recruited, hired, housed, and paid foreign citizens as employees while knowing that many of the employees were present in the U.S. on visas that did not permit employment and in some cases, as detailed herein, facilitating or encouraging the employees to obtain visa extensions to remain in the United States in an immigration status that did not permit employment.

35.     The investigation has revealed that the defendants took actions consistent with employer-employee or manager-employee relationships. These behaviors included assigning employees to work locations, approving requests for leave, firing employees, and paying employees.  In reviewing WhatsApp messages associated with this investigation, your affiant also located messages sent by **ZHFANI** and **O. SHARVIT** that appeared to be daily work assignments. These messages appear consistent with individuals exercising mid-level supervisory authority.

36.     On or about December 22, 2015, **A. SHARVIT** sent a message in English to other defendants and co-conspirators stating "[First name of M.S.] is going to get fired tonight,[first name of co-conspirator #3] please prepare her paycheck." Your affiant believes that the first name refers to M.S. According to U.S. government records, M.S. was present in the United States on M-1 (non-academic vocational training) visa status.

37.     Your affiant discovered videos in the WhatsApp program on co-conspirator #1's phone that appear to depict work parties and/or meetings attended by Unlimited employees. These parties/meetings appear to have been designed to motivate and encourage the employees.

During one video, **A. SHARVIT** and **O. SHARVIT** are featured prominently leading the group in song and celebration. Based on information provided to your affiant, it is your affiant's understanding that employees were paid at group meetings similar to these.

38.    Your affiant has identified multiple WhatsApp messages that were sent or received by A. SHARVIT, O. SHARVIT, ZHFANI, and other members of the conspiracy that listed employees' first names, and appeared to list the amounts that they were to be paid for a particular pay period. Some messages specifically indicated they were regarding "paychecks." Nevertheless, the investigation to date has revealed that most of the employees were not paid by checks from a bank or payroll company, but instead paid by cash, and without any required withholding under state and federal laws. Your affiant found a message exchange in the conspirators' WhatsApp message group in which the O. SHARVIT and a co-conspirator discussed not having enough cash to pay the "paycheck" of two employees and referenced having to wait for the envelopes to come back. Based on the investigation, your affiant believes these envelopes contained the cash from each retail locations' sales. Moreover, your affiant has not seen check disbursements from the bank accounts of the Defendants' Companies that appear sufficient to constitute the full wages of the Unlimited employees. In addition to not seeing the payments in the banking records, your affiant has reviewed Maryland wage records for several quarters, which had reported wages for very few of the Unlimited employees.

39.    The electronic messages about the employees' wages are also revealing in other ways. For example, your affiant located one message sent on or about December 27, 2015 that shows the large number of people that were being paid. The first names listed in this message correspond, with some spelling variations, to the first names of the 51 people from the employee list sent to A. SHARVIT on or about December 20, 2015 (excepting M.S., I.A., I.A.#2, and



N.G.). The list also indicates whether the employee had provided customers with refunds. Your affiant believes that **O. SHARVIT** functioned as a manager who was responsible for day-to-day functions associated with the cosmetics sales businesses including directing and managing employees. He participated in WhatsApp messages about the recruitment of foreign citizens in Israel to work for Unlimited, the assignment of employees, visa extensions, and setting the daily schedule.

40.    On or about May 12, 2015, **O. SHARVIT** wrote in a WhatsApp message in English asking co-conspirator #2 to confirm "that the company in Israel don't [sic] tell to the new employees that they finish their day at 8:00 pm" and to "bring me me [sic] maximum of employees bcse [sic] we are going to conquest America!!!!" Your affiant believes "the company in Israel" refers to the recruiting company used by the defendants in Israel.

41.    **O. SHARVIT** also played a role in the termination of employees. For example, on or about December 29, 2015, **O. SHARVIT** sent a message to the other defendants and co-conspirators stating "[First name of E.S.[10]] is fired. Please prepare his paycheck of the last week, he's leaving Tomorrow morning." In December 2015, E.S. was in the United States on a B-2 visitor visa. He departed the United States on or about January 6, 2016.

42.    On or about January 4, 2016, **O. SHARVIT** sent a WhatsApp message to the other defendants and co-conspirators stating: "[First name of M.G.[11]] needs visa extension emergency, Shes burnt tomorrow!" Your affiant believes this referred to M.G. and that "burnt" meant she would be a visa overstay. This conclusion is based on context and on a check of

---

[10]    There is a one letter variation in the first name of the employee between the message and the employee list sent on or about December 20, 2015, one uses a "y" and the other an "i."

[11]    There is a one letter variation in the first name of the employee between the message and the employee list sent on or about December 20, 2015, one uses a single "a" and the other uses two, e.g. "aa."

government records which show that M.G. was granted a period of admission to the U.S. as a B-2 visitor that ended on or about January 8, 2016.

43.    On or about December 26, 2016, **O. SHARVIT** sent a WhatsApp message stating in part "[nickname of A.B.] burned in two weeks. Working til 1/1/17 . visa extension refused, [co-conspirator #3] will check again the papers with him tomorrow night. He already talked with Rona about it. I continue siha with him tomorrow. (Possible to convince him to stay and find somebody to marry)." Your affiant believes "siha" might be a reference to meetings from the context. Your affiant believes "Rona" refers to **ZHFANI** and submits that this message demonstrates that **O. SHARVIT** knew and understood the unlawful purpose of the conspiracy, in particular, how the defendants were using commission-based, illegal labor to operate their businesses by purposely circumventing the United States visa and immigration processes. He was even willing to go further, as demonstrated here by the seeming reference to a potential marriage fraud to allow an Unlimited employee to remain in the United States.

44.    Your affiant believes that **ZHFANI** held a similar position in the company to **O. SHARVIT**. She also functioned as a manager who was responsible for helping to set schedules, assigning employees to housing, and managing employees.

45.    On or about June 12, 2015, **ZHFANI** sent a WhatsApp message to the other defendants and co-conspirators containing a list of approximately 8 apartments and approximately 27 first names assigned to the apartments. On or about September 29, 2015, **ZHFANI** sent a WhatsApp message to the other defendants and co-conspirators containing a list of approximately 9 apartments and approximately 30 first names. On or about November 21, 2015, **ZHFANI** sent a WhatsApp message to the other defendants and co-conspirators containing a list of approximately 12 apartments and approximately 42 first names. Based on the



investigation, your affiant believes these names were employees working for Defendants'

Companies and living in housing provided by the companies.

46.    On or about March 8, 2016, **ZHFANI** sent a WhatsApp message directly to co-

conspirator #1.  Based on your affiant's use of Google Translate, the email appears to state, in

part, as follows:  "Tell Oren to close the girl and the guy they are not connected to that company

are in another company that is afraid now after this story and decided to make all their

employees legal !! They're going to be monsters here!"  Your affiant submits that "Oren" refers

to **O. SHARVIT** and that in this message **ZHFANI** is discussing recruiting workers for

Unlimited and that her reference to "employees legal" refers to using employees who could be

legally employed in the United States.

47.    On or about September 22, 2016, **A. SHARVIT** directed **O. SHARVIT** and

**ZHFANI** via a group WhatsApp to tell a co-conspirator #3 which apartment to assign [First

name of O.P.].  **ZHFANI** responded via group WhatsApp indicating to co-conspirator #3 which

apartment to assign him.

48.    On or about October 18, 2016, **ZHFANI**, other subjects, and co-conspirators

received a WhatsApp message that contained a PDF file with the Airline boarding passes of

three foreign citizens, S.L., E.E., and Y.G.  In a responsive message that your affiant Google

translated, **ZHFANI** responded by asking if they had a phone and whether there was a photo of

the employees to help locate them.  U.S. government databases reveal that S.L., E.E., and Y.G.

entered the U.S. on about October 19, 2016 on B-2 visitor status. Records also show that S.L.

and E.E. interviewed for their U.S. visas together and were issued B-1/B-2 visas on or about

October 5, 2016.



49.    On or about October 21, 2016, **ZHFANI** sent a message to the other defendants and co-conspirators, which your affiant used Google to translate, stating that [First names of S.L. and E.E.] had been assigned rooms.

**The Business Operations Of The Conspiracy Involved Substantial Sums Of Money**

50.    Your affiant, other agents, and an HSI forensic accountant have reviewed extensive financial records relating to the scheme. The bank records show that the Defendants' Companies generated significant revenues by recruiting, hiring, and paying commission-based foreign workers who were not authorized to work in the United States. The records also show that Unlimited paid significant amounts of money to rent retail space, paid large amounts of money to lease housing for foreign citizens, and paid money for travel and visa extension attorney fees.

51.    An HSI forensic accountant calculated that from in or about June 2015 thorough in or about June 2017, Unlimited 13 Corp's PNC bank accounts received more than $5 million through merchant services credit card processing.

52.    The financial review found that from in or about October 2015 through in or about February 2017, Unlimited 13 Corp's PNC account paid approximately $500,000 to malls or their management companies for rent at kiosk and store locations in the White Marsh, Christiana, and Towson Town Center malls.

53.    USCIS records show that Attorney #1 was involved in submitting Form I-539s for multiple Unlimited employees. Your affiant reviewed spreadsheets of Unlimited 13 Corp.'s account at PNC Bank prepared by an HSI Forensic Accountant. Your affiant found that between in or about October 2015 and in or about December 2016, Unlimited 13 Corp's account made approximately 26 payments to Attorney #1 – likely to pay for the attorney's fees associated with the Form I-539 visa extensions.

54.     Your affiant obtained records from Western Union and compared them to copies of Western Union money orders submitted with some employees' Form I-539s as supporting documents. These photocopied money orders were submitted to demonstrate to USCIS that the employee had access to funds to pay for their extended stay in the United States. The applications of different employees contained copies of money orders with the same serial numbers as other employees. Specifically, the serial numbers were the same on the copies submitted by L.C., E.S., M.G., and Y.A. as were the money order copies submitted by S.Y., Y.B., M.G.#2, and A.B. Your affiant also determined that money orders bearing the same serial numbers as S.Y., Y.B., M.G.#2, and A.B. were deposited into the PNC Bank account of Unlimited 13. Your affiant located and Google translated WhatsApp messages revealing that **A. SHARVIT** was specifically aware of money orders being used for visa extensions and deposited into the Unlimited 13 account.

55.     Your affiant has also reviewed WhatsApp messages in which members of the conspiracy discussed financial aspects of the conspiracy, including deducting fees for visa extensions from employees' pay. For example, on January 3, 2017, **A. SHARVIT** sent a WhatsApp message, which has been translated using Google translate, in which he asked if visa money had been deducted from the wages paid to four individuals identified solely by first names.

56.     Your affiant has also identified several WhatsApp messages received by **A. SHARVIT, O. SHARVIT, ZHFANI**, and co-conspirators outlining employees' accrued wages, using notations such as LP, FHVE, and FHFT, which your affiant believes to refer to legal pay, first half visa extension, and first half of the flight ticket refund. Your affiant found the LP designation next to the first names of M.B. and H.C. – two employees who could legally work in



the United States. Your affiant believes FHVE referred to deducting visa extension costs from employees' wages. For example, in a paycheck list sent on or about March 20, 2016 your affiant found the FHVE designation used on the pay associated with the first name of M.G. (who signed a Form I-539 five days prior). Your affiant believes that FHFT refers to refunding employees for their air travel costs as was outlined in the employment contract. For example, in the same paycheck list sent on or about March 20, 2016, your affiant found the FHFT designation used on the pay associated with the first names of Y.B. and Y.E. Government records show that Y.B. arrived in the U.S. on or about November 15, 2015 on B-2 status and Y.E. on or about November 22, 2015. Your affiant submits this 50% refund of the flight costs after this period is in general terms consistent with the terms of the employment contract obtained which stated that employees would receive a 50% refund after three months of employment.

57.     As described herein, your affiant reviewed extensive electronic evidence, including emails and WhatsApp messages, banking records, and subpoenaed information. Agents have also interviewed multiple individuals. Based on this information, your affiant submits that the defendants, the Defendants' Companies, and the co-conspirators recruited foreign citizens to enter and work in the United States on visas that did not confer work authorization. They also entered into employment contracts with foreign citizens, offered reimbursements to foreign citizen employees for travel to the U.S., and/or offered foreign citizens initial discounts or free months of housing after arriving in the United States. The Defendants' Companies paid the foreign citizens a wage based entirely on sales commissions. The Defendants' Companies paid the foreign employees "under the table," and did not register their employment with State authorities, nor make appropriate withholdings from their pay, such as state taxes, federal taxes, FICA (Federal Insurance Contributions Act), etc. After foreign



18 - 1 7 9 8 - ADC    18 - 1 7 9 9 - ADC    18 - 1 8 0 0 - ADC

citizens arrived in the United States, the Defendants' Companies provided housing and/or transportation to the foreign citizens and reduced their pay for these costs and/or visa extension costs. Finally, the defendants and/or the Defendants' Companies also provided assistance to foreign citizens in applying for visitor visas and/or obtaining extensions of their admission to the U.S. on visitor status.

### III.    CONCLUSION

58.    Based on the foregoing, your affiant submits that there is probable cause to believe that **Asher SHARVIT**, **Oren SHARVIT**, and **Rona ZHFANI** conspired to defraud the United States, in violation of 18 U.S.C. Section 371, by impeding, impairing, and obstructing the lawful government functions of the U.S. Department of State ("DOS") and the U.S. Department of Homeland Security ("DHS") to administer, regulate, and enforce laws and regulations concerning (i) the hiring of foreign citizens, (ii) the issuance of nonimmigrant visas, and (iii) the entry of, presence of, and work restrictions on foreign citizens in the United States, for which they are respectively responsible.

James J. Jenkins
Special Agent
U.S. Department of State
Diplomatic Security Service

Sworn to and subscribed before me on this 25th day of June 2018.

Honorable A. David Copperthite
United States Magistrate Judge

